# IN THE COURT OF APPEALS OF IOWA

No. 14-1361
Filed April 8, 2015

**TYE DARRELL MOELLERS,**
    Petitioner-Appellee,

**vs.**

**KAYLA MAE SINDELAR,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Winneshiek County, John Bauercamper, Judge.

Kayla Sindelar appeals the district court's denial of her petition for modification of a stipulated decree. **AFFIRMED.**

Thais Ann Folta until withdrawal, Patrick A. Ritter of Elwood, O'Donohoe, Braun & White, L.L.P., Cresco, for appellant.

Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Kayla Sindelar appeals the district court's judgment and decree denying her petition to modify a stipulation regarding custody, visitation, and support. On appeal, Kayla contends the district court erred in concluding she had not proved a substantial change in circumstances prerequisite to modification of the prior decree. Our review of equity actions is de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Melton*, 256 N.W.2d 200, 205 (Iowa 1977). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of McDermott,* 827 N.W.2d 671, 676 (Iowa 2013).

I.

Kayla and Tye Moellers were in a long-term relationship but never married. They had one child together, P.M. After the parties' relationship ended, they entered into a stipulated decree regarding custody, visitation, and support. The stipulated decree was filed in December 2011. P.M. was one and one-half years old at the time the decree was filed. The parties agreed to joint legal custody and shared physical care of P.M. The parties initially agreed for Tye to have custody of P.M. on Tuesdays and Thursdays and every other weekend. Over the course of time, the parties informally modified the physical care arrangement on several occasions and ultimately agreed to alternate weeks to create greater stability in P.M.'s routine. Exchanges now occur at school or day care on Mondays.

In July 2013, Kayla filed a petition for modification, seeking physical care of P.M. and requesting that Tye have visitation with P.M. one day per week and every other weekend. She also sought economic relief consistent with the sought-after change in the physical care arrangement. The district court concluded Kayla did not prove a substantial change in circumstances necessary to modify the decree. Kayla timely filed this appeal.

II.

Changing physical care of a child is one of the most significant modifications that can be undertaken in family law matters. *See In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). The party requesting modification must first establish a substantial change in material circumstances. A substantial change in circumstances is one that is more or less permanent, not contemplated by the court when the decree was entered, and that affects the child's welfare. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *Thielges*, 623 N.W.2d at 238. After establishing a substantial change in circumstances, the party seeking modification must also establish the ability to minister more effectively to the needs of the child. *See Frederici*, 338 N.W.2d at 158. This is a "heavy burden," and rightly so. *See Thielges*, 623 N.W.2d at 235–37; *In re Marriage of Rosenfeld*, 524 N.W.2d 212, 213 (Iowa Ct. App. 1994). To promote stability in the child's life, our courts have concluded that "once custody of children has been determined, it should be disturbed only for the most cogent reasons." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996).

Kayla first argues there has been a breakdown in communication between the parties that renders the joint physical care arrangement unworkable. "Even though the parents are not required to be friends, they owe it to the child to maintain an attitude of civility, act decently toward one another, and communicate openly with each other." *In re Marriage of Bolin*, 336 N.W.2d 441, 447 (Iowa 1983). Thus, an important consideration in whether a joint physical care arrangement should continue is whether the parents can communicate civilly and effectively to parent the child. *See In re Marriage of Hansen*, 733 N.W.2d 683, 698-99 (Iowa 2007); *In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998) (finding joint physical care no longer appropriate where parents could not cooperate or communicate).

While there is some evidence in the record to support a finding that communication between the parties is sometimes strained, we conclude Kayla failed to establish a breakdown of communication constituting a substantial change in circumstances. *See, e.g., In re the Marriage of Schilling*, No. 10–0615, 2010 WL 4485814, at *2 (Iowa Ct. App. Nov. 10, 2010) (finding no breakdown in communication because co-parents were talking on the phone almost every day about the care of their son). Many of the parties' strained telephone conversations involve situations in which Kayla telephoned Tye and discussed personal issues unrelated to P.M. Tye admitted to occasionally losing his temper during these calls. The frequency of those calls has decreased. The greater weight of the evidence shows the parties can and do effectively communicate about issues regarding P.M. Many of the parties' prior communication problems

have lessened now that the parties are alternating care of P.M. every week rather than every several days. The parties agree they still speak frequently regarding P.M. Kayla agreed at a family meeting held in August 2013, after the filing of this petition, that the parties have the ability co-parent. Further, there is no showing that the strained communications negatively affect the welfare of the child. *See In re Marriage of Berns*, No. 13-0013, 2013 WL 4009678, at *3 (Iowa Ct. App. Aug. 7, 2013) ("The parties' inability to communicate alone is not enough, there must be a showing that the lack of communication affects the welfare of the child or that the child will have superior care if physical care is granted to just one parent."); *Marriage of Hamilton*, No. 13-1497, 2004 WL 902399, at *2 (Iowa Ct. App. Apr. 28, 2004) (affirming denial of modification where "record supports the conclusion that, except as it relates to communicating with one another, both parties continue to be active, involved and loving parents who more than adequately meet their children's physical, psychological, and emotional needs").

Kayla also argues Tye's loss of respect for her and hostility toward her constitutes a substantial change in circumstances. *See* Iowa Code § 598.41 (2013) (providing that when considering what custody arrangement is in the best interests of the child the court is to consider "[w]hether each parent can support the other parent's relationship with the child"); *In re Marriage of Crotty*, 584 N.W.2d 714, 716 (Iowa Ct. App. 1998) ("Iowa courts do not tolerate hostility exhibited by one parent to the other."). Kayla cites several instances of disrespect in support of her argument. On one occasion, Kayla testified, she

called Tye, and he answered the call by asking "why the fuck are you calling me?" She asked him if he had time to talk, and Tye replied "not to talk to you" and hung up. Kayla also testified that Tye avoids meeting with her and that Tye requested to speak with P.M.'s day care teacher outside of Kayla's presence.

We conclude the alleged conduct does not constitute a substantial change in circumstances. We do not in any way condone Tye's conduct, but the examples cited by Kayla appear isolated. Further, there is not any indication that the conduct has interfered with the child's relationship with Kayla. It is the "[d]iscord between parents that has a disruptive effect on children's lives" that creates a substantial change in circumstance. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002); *see also Marriage of Berns*, 2013 WL 4009678, at *3; *Marriage of Hamilton*, 2004 WL 902399, at *2. If this type of conduct were to persist or escalate to the extent it negatively impacted the ability of the parents' to raise this child, it could rise to the level of a substantial change in circumstances.

Kayla argues Tye's alcohol use has endangered P.M. and amounts to a substantial change in circumstances. Criminal conduct and alcohol abuse can constitute a substantial change in circumstances. *See In re Marriage of LeGrand*, 495 N.W.2d 118, 120 (Iowa Ct. App. 1992). There is evidence in the record that Tye abused alcohol and that this alcohol abuse created a risk of harm to P.M. On June 23, 2013, Tye was charged with operating while intoxicated ("OWI"), second offense. The record shows that on the evening before the offense date, Tye was drinking with friends. He did not drive home that night but

instead got a ride. The next morning, Tye drove himself to pick up P.M. Tye believed that he was sober and was able to drive. After the exchange, with P.M. in the car, Tye was pulled over by a police officer. Kayla was still in the area, approached the officer, and requested that the officer perform a breath test on Tye. Tye had blood alcohol content of .13 at approximately 8:30 a.m. He ultimately was convicted of OWI as a second offense.

This incident is very troubling, and whether it constitutes a substantial change in material circumstances presents a close question. Ultimately we affirm the judgment of the district court. "Our precedent cautions us to exercise care in judging a parent based on activities which take place during a particular time frame. Instead, a better picture of a parent can be found by viewing the total circumstances, and putting isolated events into perspective." *Buschbom v. French*, No. 07-1036, 2008 WL 680404, at *3 (Iowa Ct. App. Mar. 14, 2008). When put into perspective, Tye's conduct appears isolated. As a result of this incident, the Department of Human Services ("DHS") opened a child abuse investigation. DHS determined this was an isolated event and unlikely to reoccur, and DHS did not place Tye in the child abuse registry. While this was a second offense, the prior offense was more than ten years ago when Tye was a young man. Since this incident Tye has complied with all court orders. He completed his substance abuse evaluation and treatment. Tye has worked with a counselor for ongoing treatment to prevent any situation like this happening again. He maintained his employment and was able to arrange transportation for the child. The isolated conduct coupled with Tye's corrective action distinguishes

this case from others finding a substantial change in circumstances related to substance abuse. *Cf. In re Marriage of Crow*, Nos. 0-790, 99-1993, 2001 WL 195206, at *2 (Iowa Ct. App. Feb. 28, 2001) (affirming denial of modification where mother was arrested with methamphetamine and stating "our decision not to change the physical care arrangement is ultimately based on [the mother's] recognition of the consequences should she not comply with the conditions of probation"), *with LeGrand*, 495 N.W.2d at 120 (affirming modification where father had serious criminal record and long history of alcohol abuse); *Marriage of Pals*, No. 11-0177, 2011 WL 4578461, at *2 (Iowa Ct. App. Oct. 5, 2011) (affirming modification where parent with physical care relapsed for a period of nine months and placed children at risk of harm) ; *Buschbom*, 2008 WL 680404, at *3 (affirming modification where mother relapsed, used alcohol for two years, lost her job, and placed son in danger while driving under the influence); *Marriage of Bode*, No. 05-0817, 2005 WL 3116134, at *6 (Iowa Ct. App. Nov. 23, 2005) (affirming modification where mother abused alcohol, was convicted of second OWI during modification proceeding, but refused to seek treatment).

Although we have addressed each of Kayla's main contentions in serial fashion, we have considered the effect of the combination of these circumstances. *See In re Marriage of Michael*, 839 N.W.2d 630, 635-39 (Iowa 2013) (considering relevant factors in combination); *In re Marriage of Chmelicek*, 480 N.W.2d 571, 575 (Iowa Ct. App. 1991) (setting forth analysis where combined effect of several circumstances may constitute a material and substantial change in circumstances). We think this a close case. The primary

considerations in support of our conclusion are the facts do not yet demonstrate a long term or permanent change in circumstances detrimental to the child's welfare and the parents have demonstrated an ability to co-parent over a substantial period of time.

III.

We have considered each of the parties' contentions in full. For the reasons set forth above, we affirm the judgment of the district court.

**AFFIRMED**